DECISION
This matter comes before the Superior Court on appeal from a decision of the Little Compton Zoning Board of Review (Zoning Board). Francis B. Woodcock Limited Partnership (Appellant) seeks reversal of a January 22, 2008 decision to uphold the issuance of a building permit and certificate of occupancy. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I FACTS TRAVEL
Gordon L. Parker (Parker) applied for and was issued a building permit on January 13, 2005 (2005 permit) to construct an accessory structure adjacent to his home in Little Compton, Rhode Island. In his application, Parker stated that he is retired. Parker further stated that he intended to use the accessory structure for painting, drawing, managing his affairs and his work with non-profits, and other activities such as reading. Parker and the Appellants are abutters and *Page 2 
share a common twelve to fifteen foot right of way, such that all traffic to Parker's household passes by Appellant's home. The right of way is only wide enough for one car to pass at a time.
After the 2005 permit was issued, Parker contends that construction commenced immediately: by the end April 2005, the structure was framed out. Although there is evidence that Appellant was aware of the 2005 permit, it is undisputed that she never filed an appeal with the Zoning Board. The structure was thereafter completed.
On May 27, 2007, Parker filed a new Building Permit Application to convert a portion of the existing accessory structure into an accessory family dwelling unit pursuant to Section 14-5.5b of the Little Compton Zoning Ordinance. The Building Official issued a building permit, followed by a Certificate of Use and Occupancy on June 14, 2007 (2007 permit). On September 4, 2007, Appellant filed an appeal with the Zoning Board challenging the 2007 permit.
Appellant raised six reasons why the Parker's 2007 permit violated the Town Zoning Ordinances. First, Appellant contends that 20 Quoquonset Lane is not the "primary and legal residence and domicile" of Parker, thus, any permit for the accessory uses for home occupations is void as a matter of law. Second, the accessory structure was not completed until 2006 in violation of the ordinance for conversion to an accessory family dwelling unit, which requires that the original structure be in existence for two years prior to conversion. Third, the accessory family dwelling unit, the subject of the 2007 permit, exceeds 40% of the principal structure. Fourth, no more than one customary home occupation accessory use per lot is allowed by right and this building permit lists two: the studio and the office. Fifth, no more than 50% of one floor may be used for an accessory occupation and this is a mixed use with an office on the first floor and a studio on the second floor. Finally, the septic system for the accessory structure was built *Page 3 
on Parker's adjoining lot. Appellant contends that this merges the two lots and thereby extinguishes the right of way on Quoquonset Lane.
Parker filed a motion to dismiss the appeal, alleging the appeal was untimely. The Zoning Board held a hearing limited to the issue of timeliness on October 19, 2007. The Zoning Board decided that the appeal was timely. At the hearing on January 16, 2008, the Zoning Board first heard Parker's motion to dismiss all of Appellant's issues regarding the 2005 permit. This motion was granted over Appellant's objection. The Zoning Board proceeded to hear Appellant's arguments regarding the merits of the 2007 permit. The Zoning Board found that Parker's accessory family dwelling unit fulfilled all of the conditions required by Little Compton, R.I. Code § 14-5.5b (2009) (hereinafter Code §). The Zoning Board, thus, upheld the issuance of the 2007 permit to convert the home office into an accessory family dwelling unit. Accordingly, Appellant's appeal was denied.
The Zoning Board posted its final written decision on January 22, 2008. Appellant filed an appeal in Newport County Superior Court on February 1, 2008 claiming that the Zoning Board erroneously limited the scope of her appeal and insufficiently stated its findings of fact. This Court heard oral arguments on June 3, 2009.
 II STANDARD OF REVIEW
The Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69(D), which provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant *Page 4 
have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolou v.Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount, more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand and GravelCo. Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d 824-825). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings."New England Naturist Ass'n, Inc. v. George,648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v.International Association of Fire Fighters, AFL-CIO, Local1589, 119 R.I. 506, 380 A.2d 521 (1977).
 III ANALYSIS
Appellant contends that the decision of the Zoning Board must be overturned for two reasons: (1) the 2005 permit was for an illegal use of the property because Little Compton is not Parker's primary legal residence and domicile pursuant to § 14-5.6a of the Little Compton *Page 5 
Zoning Ordinances, thus, the 2007 permit authorizing expansion of the use approved by the 2005 permit was invalid; and (2) the Zoning Board failed to make findings of fact in its January 22, 2008 decision.
 A Notice
Parker argues that Appellant's failure to comply with § 45-24-69.1 requires immediate denial of the appeal. Section 45-24-69.1 requires an aggrieved party to give notice to the same parties that had notice of the original Zoning Board hearing within ten (10) days of filing the notice of appeal. Given the Rhode Island Supreme Court's recent decision in JeffAnthony Properties v. The Zoning Board of Reviewof North Providence, 853 A.2d 1226 (R.I. 2004) finding that the notice requirement was not jurisdictional, and the fact that Appellant has since complied with § 45-24-69.1, the Court will not deny the appeal on these grounds.
 B Appellant's Challenge to the 2005 Permit
Appellant's primary position is that Parker cannot derive a legal use from an illegal use. Appellant contends that the Zoning Ordinances did not authorize Parker's structure for the purposes Parker originally intended in 2005; therefore, the structure cannot be converted into a dwelling unit. Appellant also contends that the Zoning Board did not follow proper procedure when it precluded Appellant from presenting evidence that the use was illegal in the first instance.
Parker argues that the 2005 permit was legally issued. Additionally, Parker argues that Appellant was properly precluded from arguing the illegality of the 2005 permit because, although Appellant complained about the construction, Appellant never filed an appeal after the *Page 6 
permit was issued. Parker contends that Ms. Johnson, the managing partner of Appellant and resident on the site, was on immediate notice of Parker's use of the 2005 permit because Parker began building shortly after the permit was issued. Thus, Appellant cannot argue that she was without knowledge of the construction.
The Court finds that Appellant cannot challenge the 2005 permit through the appeal of the 2007 permit. It is well-settled that a Zoning Board has no authority to hear an untimely appeal on its merits. MacGregor v. Zoning Bd. of Bristol,94 RI 362, 365, 180 A.2d 811, 814 (1962). Here, the Town Ordinance requires that the appeal of the decision of any zoning enforcement agency or officer be taken within thirty (30) days of the date of recording of the decision. Code § 14-9.7. This thirty (30) day limit is not without exception. An aggrieved party has thirty (30) days to appeal from the day he or she knew or should have known of the zoning enforcement agency or officer's decision. Id.
The 2005 building permit was issued January 13, 2005. According to the Defendant, the two-story structure was framed out by the end of April, 2005. It is undisputed that Appellant never filed an appeal of the 2005 permit. The Court is not persuaded by Appellant's suggestion that she was not on notice of the construction of a two-story structure immediately adjacent to her home, in which Appellant was living during the construction. Therefore, the Court finds that the Zoning Board properly precluded argument regarding the illegality of the 2005 permit at the January 16, 2008 hearing.
 C Legality of the 2005 Permit
Appellant urges the Court to find that she may challenge the 2005 permit regardless of the thirty (30) day appeal period. Code § 14-9.7. Appellant relies on Town of Johnston v. *Page 7 Pezza, 723 A.2d 278 (R.I. 1999); Almeida v. Zoning Bd. ofReview of Tiverton, 606 A.2d 1318 (R.I. 1992). These cases are neither factually nor legally analogous to the case at hand. BothPezza and Almeida concerned the enforcement authority of a new building official in regards to permits granted by his predecessor. Neither case concerned the authority of an abutting landowner to interfere with a neighbor's construction. Therefore, the Court finds the Pezza rule inapplicable to the facts of this case.
Assuming for the purposes of argument, however, that Appellant may challenge the 2005 permit through this process, Appellant's challenge must nonetheless fail. Appellant has not demonstrated that the accessory use was a customary home occupation, making the use illegal because the property was not Parker's primary residence.
Appellant insists that Parker's 2005 use must be a customary home occupation because it does not fit into the any of the other types of accessory uses defined in Code §§ 14-5.4 — 5.6. A customary home occupation must take place at the user's "legal residence and domicile." Code § 14-5.6a. It is undisputed that Parker's primary residence is in Providence, thus, a customary home occupation at Parker's Little Compton property would be prohibited.
However, Appellant's reliance on Code § 14-5.6 is misplaced and demonstrates a misreading of the Zoning Ordinances. Code §§ 14-5.4-14-5.6 list six (6) specific categories of accessory uses that, because of particular public interests, require additional oversight and regulation. For example, Code § 14-5.4 lists three miscellaneous accessory uses: private garage or shed; storage of vehicles; and swimming pools. The garage and vehicle provisions serve to preserve the rural/agricultural character of the Town by specifically limiting the types of vehicles stored and the location of stored vehicles on private property. The swimming pool provision requires that a homeowner secure the pool area in the interests of public safety. The next *Page 8 
category of accessory uses requiring additional oversight implicates the Town's interests in affordable housing and the protection of family living units through its regulation of accessory apartments and family dwelling units. Code § 14-5.5. The last type of accessory use, customary home occupations, was enacted "in order to maintain the rural agricultural character of the Town." Code § 14-5.6. The Town enacted a more detailed ordinance regarding home occupations because of the Town's strong interest in regulating the flow of traffic without depriving homeowners of the benefits of their property.
With the 2005 permit, Parker built a home office. It does not necessarily follow that a home office qualifies as a customary home occupation. Parker sought permission to build the home office so he would have a private place to conduct his personal business that would also function as an art studio and storage space. In contending that Parker's use must be a customary home occupation, Appellant ignores Code § 14-10(4), which provides the definition of accessory use or structure.
 "Accessory use or structure shall mean a use or structure clearly accessory or incidental to the principal use of a lot or structure and located on the site of the principal use or structure. Examples include but are not limited to: private swimming pool, residential garage, carport, tool shed, barn, off-street parking area, flag pole, radio antenna, windmill, sign and other similar uses or structures. Such accessory use shall not be permitted without the principal use to which it is related. Where a substantial part of the wall of an accessory building is part of the wall of the principal building or where an accessory building is attached to the principal building in a substantial manner as by a roof, such accessory building shall be counted as part of the principal building." Code § 14-10(4) (emphasis added).
The language of the definition of accessory uses and structures explicitly states that the list of examples is not exhaustive. Appellant has failed to produce any evidence that Parker ran a business out of this structure. Therefore, the Court finds that Code § 14-5.6 has no application to *Page 9 
Parker's initial use pursuant to the 2005 permit. Thus, the Court finds that Parker's home office/art studio is a legal accessory structure according to the broad definition of Code § 14-10b.4.
 D Sufficiency of the Findings of Fact
Appellant also challenges the Zoning Board's 2008 decision upholding the 2007 permit on procedural grounds. Appellant argues that the Zoning Board failed to make findings of fact with respect to the 2007 Permit. Appellant presents a novel argument regarding § 45-24-61: Appellant argues that the Zoning Board failed to make findings of fact on the record at the hearing, and that this failure requires overturning the Zoning Board's decision. Neither § 45-24-61 nor the well-developed case law on this topic requires the Zoning Board members to state their findings of fact live at the hearing. In fact, § 45-24-61 explicitly requires thedecision of the Zoning Board to include findings of fact.
Rhode Island General Laws § 45-24-61 requires that "[t]he zoning board of review shall include in its decision all findings of fact." Furthermore, it is well established that "a zoning board of review is required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review." Von Bemuth v. Zoning Bd. ofReview of New Shoreham, 770 A.2d 396, 401 (R.I. 2001) (quotingCranston Print Works Co. v. City of Cranston,684 A.2d 689, 691 (R.I. 1996)); see also Irish Partnership v.Rommel, 518 A.2d 356, 358 (R.I. 1986); May-Day RealtyCorp. v. Bd. of Appeals of Pawtucket,107 R.I. 235, 239, 267 A.2d 400, 403 (1970).
In assessing the sufficiency of zoning board findings, this Court must decide whether the board members resolved the evidentiary conflicts, made the prerequisite factual determinations, *Page 10 
and applied the proper legal principles. Irish Partnership,518 A.2d at 358-59 (citations omitted). Those findings must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany. Id. These minimal requirements, unless satisfied, make judicial review of a board's work impossible. Id. "[W]hen the board fails to state findings of fact, the court will not search the record for supporting evidence or decide for itself what is proper in the circumstances." Irish Partnership,518 A.2d at 359 (citing Hooper v. Goldstein,104 R.I. 32, 44, 241 A.2d 809, 815 (1968)).
Here, the decision states the four (4) findings of fact made by the Zoning Board. These findings address all of the pertinent issues necessary to the resolution of the appeal. In order to permit the conversion of an accessory structure into an accessory family dwelling unit, the Zoning Ordinances require (1) that the original accessory structure "shall have been in existence for a minimum of two (2) years prior to the establishment of the accessory family dwelling unit;" (Code § 14-5.5b.4); and (2) "the size of any proposed accessory family dwelling unit shall be restricted to 40% of the gross floor area of the principal structure." Code § 14-5.5b.5.
Appellant's main contention concerns the preclusion of argument regarding the 2005 permit. In its written decision, the Zoning Board specifically explained its reasoning for granting Parker's motion to dismiss all issues related to the 2005 permit. The Zoning Board found that Code § 14-5.6, which Appellant argued prohibited Parker's structure ab initio, does not discuss the issue properly before the Board: Parker's conversion of an accessory structure to an accessory family dwelling unit. The Zoning Board continued by summarizing the testimony of Michael Mello, the Town's Building Official, and Richard Rogers, the contractor for the project. Mello's and Rogers' testimony factually supported the Board's findings of fact:
 (1) "That the Petitioner [Appellant] failed to demonstrate that the structure was not in existence in May, 2005. *Page 11 
 (2) "That the only evidence before the Board was that the project complied with the requirements for an accessory family dwelling unit, including the requirement that the accessory family dwelling unit be less than 40% of the primary structure.
 (3) "That the exclusion of the studio was appropriate in calculating the total square footage of the accessory family dwelling unit." (Decision p. 4.)
The Court concludes that in the instant matter, the findings set forth in the Zoning Board decision satisfy the minimum requirements. The Zoning Board discussed the relevant evidence and clearly made findings of fact regarding all pertinent issues that the Board had jurisdiction to decide.
 CONCLUSION
After review of the entire record, this Court finds that the Zoning Board's decision was not in violation of constitutional or statutory provisions, was not in excess of the Zoning Board's statutory authority, was made upon lawful procedure and was not clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record. The Zoning Board's actions were not arbitrary or capricious or characterized by an abuse of discretion and not affected by other error of law. Accordingly, the Appellant's appeal is denied, and the decision of the Zoning Board is hereby affirmed.
Counsel shall agree upon an appropriate form of judgment, reflective of this decision, and submit it to the Court forthwith for entry.